## Case No. 13,330.

### In re STEADMAN.

[8 N. B. R. 319.] [1]

District Court. N. D. Georgia.    Sept. 10, 1873.

LANDLORD AND TENANT — BANKRUPTCY — POSSESSION OF BANKRUPT — CONTEMPT.

1. A lease to S. terminated by condition broken, after S. filed his petition in bankruptcy, and before the appointment of an assignee. The lessor, by summary proceedings in the state courts, evicted S. and took possession of the premises leased. On petition of S.'s assignee in bankruptcy, to require the lessor to restore possession or show cause why he should not be attached for contempt, *held*, the possession of the bankrupt, after petition filed, is the possession of the bankrupt court, and any interference therewith, except by leave of that court, is in contempt of its authority.

[Cited in Lockett v. Hill, Case No. 8,443; Lansing v. Manton, Id. 8,077; Re Jessup, 19 Fed. 95; Re Lyman, 55 Fed. 42.]

[Cited in brief in Weeks v. Prescott, 53 Vt. 69.]

2. Ordered, that lessor restore possession of the property leased within 20 days, or, in default, attachment absolute for contempt issue.

In bankruptcy.

ERSKINE, District Judge. March 22, 1873, Enoch Steadman, of Newtown county, in this district, filed in this court his petition and schedules, making oath that the schedules contained a statement of all his debts, etc., and an accurate inventory of all his estate and effects, assignable under the bankrupt act [of 1867 (14 Stat. 517)], whereupon he was adjudged a bankrupt by Register Murray. to whom the petition was referred. There being a failure to choose an assignee at the first meeting of creditors, the district judge selected and appointed Hon. Amos T. Akerman assignee of the estate, on the 26th of April last, and two days thereafter he conveyed and assigned to him all the estate, real and personal, including all property and effects of whatever kind of which the bankrupt was possessed, interested in, or entitled to, on the 22d of March. Mr. Akerman accepted the trust, and entered upon the duties of his office. On the 9th of May last, as assignee of said estate, he filed a petition in this court, against David W. Spence and Oliver S. Porter, residents of said Newtown county. The petition, after setting forth the filing of the petition in voluntary bankruptcy by said Steadman, his adjudication, the failure of the creditors to

choose an assignee, the appointment of the assignee by the district judge, and the assignment of the estate to the appointee, goes on to state: That among the property possessed by said Steadman, on the 22d of March, 1873, and then claimed by him as his own, was a tract of land in said county, on Yellow river, containing about four thousand three hundred acres, comprising divers farms, a valuable water power on said river, at Cedar Shoal, and two yarn factories, a saw mill at said shoal, and the machinery appurtenant thereto, a dwelling house and out-buildings, occupied by the bankrupt as a residence and store house, and many other buildings, and all known as the Steadman factory property. The petitioner further states: That said property at one time unquestionably belonged to Steadman, but was the subject of certain instruments entered into between him of the one part, and David W. Spence and Oliver S. Porter, in the month of September, 1871, which, as contended by Steadman, constituted an equitable mortgage of said property to said Spence & Porter, to secure certain debts owed to them by him, and, as construed by them, constituted a conveyance of said property from him to them, in fee, with a right to re-purchase in him, and a right of possession in him, until the 1st of January, 1874, on his compliance with certain conditions. That said instruments came for construction before the supreme court of Georgia, at the January term, 1873, in a litigation between the parties; and the court held it was a question of fact for the determination of a jury whether the instruments constituted an absolute conveyance or a mortgage, and also held that Steadman was entitled to keep possession of said property until the 1st day of January, 1874, provided he keep the property insured and pay the other parties two thousand dollars on the 1st day of April, 1873, and the same sum every three months thereafter, until January 1, 1874. That immediately after Steadman was adjudged a bankrupt by the register he appointed him agent to take charge of said property until the appointment of an assignee; that while Steadman was so holding the property, and before the appointment of an assignee, to wit, on the 15th of April, 1873, he was dispossessed of a part of said property, to wit, of said factories, mills and machinery, and of most of said farms, by the sheriff of said county, at the instance of Spence & Porter, who had caused to be issued by some state magistrate a process against Steadman as their tenant of said premises, holding the same after the expiration of his tenancy, and caused the sheriff to execute said process and eject Steadman from said part of the property, and to place themselves in possession of the same, and which possession they now hold. The petition further alleges, that the petitioner, on the 3d of May last, demanded, as assignee as aforesaid, of

[1] [Reprinted by permission.]

Spence & Porter, the immediate possession of said property, and they refused to yield to him the possession of the same. The petitioner further charges, that Spence & Porter, by thus taking possession, have put a stop to farming operations thereon and to the running of the machinery, and thereby and otherwise have greatly lessened the value of the bankrupt's estate; and that they knew when they instituted the proceedings and obtained possession of the property that Steadman had been adjudged a bankrupt, and was holding it as the agent of the district court under the appointment of the register, and that said proceedings of Spence & Porter were taken without permission of the said district court of the United States. And in conclusion, the petitioner avers that said proceedings of Spence & Porter were unlawful, and injurious to his rights, as assignee, and in contempt of this court, and he prays that a rule may be issued requiring them to show cause why they should not be attached for contempt of the authority of this court, and why the petitioner should not be placed in possession of said property by this court.

The court, on reading the petition, granted a rule nisi in accordance with the prayer, and the defendants, Spence & Porter, were served by the marshal on the 12th of May, and on the 31st of May they put in their answer to the petition and rule, and on the 20th of August they filed an amendment to it. The answer disclaims and denies any purpose, design or intention of committing any contempt, and that they were under no writ of injunction, order, judgment, or decree not to remove their tenant (Steadman) from their premises by local process; they state that Steadman was, in fact, their tenant, and that his term had expired, and that he had not surrendered possession according to law; they deny that he was or could be rightfully in possession, as the agent of the register in bankruptcy, and that he (Steadman) could not divest himself of the character of tenant to the respondents, and hold against them as agent of another after the expiration of his term. And as to putting the assignee in possession, they set up the facts alleged in their answer to the bill of Steadman, referred to in the assignee's petition, as showing good and sufficient reasons to the contrary; and offer the answer and exhibits thereto annexed on the hearing of this matter; and that if the assignee has any right to the possession, he cannot enforce it in this summary method, but must resort to a regular action for that purpose. The amendment to the answer avers that the possession of which they deprived Steadman was, in fact, the same and identical one which he acquired from them as their tenant, he having held the same continuously without break or intermission from the time he continued as such tenant, and that he never did, in fact, vacate to go out of possession of said premises until put out by the sheriff, and never had, up to that time, divested himself of the character of tenant.

To remove tenants who are holding over after the expiration of their term or lease, is, under the provisions of the Code (sections 4005–4007), briefly as follows: When it is claimed that a party is thus holding over, and on demand, refuses or omits to surrender the possession, the owner may go before a judge or justice of the peace, describe the premises and make oath to the facts; upon which a warrant or process issues to the sheriff to remove the tenant and place the owner in possession, unless the tenant shall arrest the proceedings by a counter affidavit that the lease or term has not terminated, and give bond for the payment of such sum and costs as may be recovered against him at the trial before the superior court. Adopting this mode, Spence & Porter went before a state magistrate, described the lands, tenements, etc., alleged to be held over by Steadman—these lands, tenements, etc., being the same property which Steadman had, on the 22d of March, 1873, returned in his petition, and which he swore was then in his possession and under his control, but encumbered by a deed as security to Spence & Porter. They made their affidavits accordingly, stating that on the 19th of September, 1871, they made Steadman a lease of these premises, with all the machinery therein, and improvements thereon, for one year, to commence on the 1st of January, 1872, and to end on the 31st December, 1872; that they have demanded and desire possession of said property which he is holding over, and that he refuses and neglects to deliver possession. On this the magistrate issued a warrant, directed to the sheriff of Newtown county, who, on the 15th of April last,—the day of making the affidavits,—removed Steadman from the occupancy of the premises and placed Spence & Porter in possession of the same.

It is not questioned that Steadman once owned this very property in fee; but Spence & Porter have always insisted that in September, 1871, they became the absolute owners of it by purchase from Steadman; while he, on the other hand, contended before the state courts—and the assignee does the same here—that such is not the legal fact; that although he made a deed in fee to it, and received from them a lease of the property at a named rent, yet that this was a mere devise, mutually entered into between them and him to loan and borrow money at illegal interest, and to evade the usury laws. This controversy found its way into the superior court of Newtown county. The court granted Steadman an injunction, restraining Spence & Porter from ejecting him, or from levying any fi. fas. upon any of his other property. This ruling came before the state supreme court for review, and on the 25th of February, 1873, McCay, J., speaking for the court,

said: "We cannot act upon the demurrer to the bill nor on the merits of the case, as it may finally be made before the jury (the usual mode of trial in chancery causes in Georgia) or before us." It also held that the superior court erred in enjoining the fi. fas. In concluding the decision the court said: "We are of the opinion that the facts, as they appear by the bill and answers, and by the proposition, lease and bond, justify the court in considering the complainant to have made out such a prima facie case of compliance with the real intent of the lease, as to authorize an injunction against his eviction, for his failure to pay the ten thousand dollars instead of eight thousand dollars, for the rent of 1872, and that the injunction against his .eviction should be continued until .the 1st of January, 1874, provided he keep the property insured as agreed upon, and promptly pay eight thousand dollars rent for 1873, in .quarterly payments, on the 1st of April, July, and October, and on the 31st of December, 1873, with the right to re-buy at· the end of 1873, as provided in the bond, leaving the real truth.of the amount of the rent (it being a point in dispute whether the true yearly rent was eight thousand dollars or ten thousand dollars) for 1872 and 1873, as well as whether the transaction of September, 1871, was a mortgage or sale—the question of usury and other questions made to. be finally settled by the jury on the trial. Judgment reversed with instructions." Spence v. Steadman (1873) 49 Ga. 133.

As the legal effect of the.lease from Spence & Porter to Steadman was discussed, it is, perhaps, due to the counsel on both sides that a synopsis of it be given, as a matter of illustration rather than. a proof of fact: Steadman is to hold the described property for the term of one year, commencing from the 1st of January, 1872, and to continue to 1st of January, 1873, he to pay the annual rent of ten thousand dollars, payable at the expiration of every quarter, for which he gave his notes each for two thousand five hundred dollars; lessors bind themselves to continue and extend said lease to 1st of January, 1874, provided he comply with certain obligations "hereinbefore and hereinafter" set forth, and the full payment on the 1st of January, 1873, of the ten thousand dollars; and if he also then pay fifty thousand dollars he is to receive from the.lessors a clear title to the property; and if this lease continue to the 1st of January, 1874, and he, on or before that day, pay ten thousand dollars rent, and an additional fifty thousand dollars, he is to receive from them a clear title to the whole property. And Steadman covenants to insure from fire in a responsible company, at his own expense, the machinery and buildings; and to do the necessary repairs at his own cost. But should he fail or refuse to comply with the terms of the lease, at the end of the first year, then he is to give immediate possession, without demand.

And should the terms be complied with the first year and not the second—if lease extended—he binds himself, likewise, to yield immediate possession to the lessors.

The decision of the supreme court, reversing the ruling of the superior court and giving it instructions, was invoked by the assignee in his pétition and in his argument to sustain his cause; while Spence & Porter, in their response, relied on the lease from them to Steadman; also on their answer to the bill filed by him against them in the state court, and inter alia, on the state law, as found in the Code (already cited), which confers on a lessor, or owner, the right to remove his tenant, who is holding over, and to re-enter the claimed premises. And they claimed that this local right ·was saved to them notwithstanding such tenant or lessee may have gone into bankruptcy (under the act of the congress of the United States, passed March 2, 1867), anterior to the termination of his lease, or the forfeiture of his term, and anterior, too, to the appointment of the assignee. Besides, that although they relied on the answer to the bill and the lease, yet they did not ask to go behind the opinion of the supreme court. Further, that the right to re-enter accrued to them. by reason of the non-payment of the quarter's rent due and owing to them on the 1st of April, 1873, so they had a right to remove Steadman who—although he had become a bankrupt on the 22d of March—was nevertheless their tenant holding over, when they removed him by state process, on the ·15th of April. Their learned counsel further insisted that no act which they had done could make them guilty of a contempt, for neither order or writ of injunction ever was issued from this court to restrain them; nor had any writ· gone forth commanding them to answer an action at law. And if the assignee had any injury to complain of he had mistaken his remedy. While replying to the argument of Mr. Bleckley, Mr. Akerman expressed a . willingness to rest his side of the case on the construction placed on the lease by the supreme court of Georgia; or to abide by such interpretation as might be given to it by the federal court,—submitting that should this court take the lease itself as a guide, whether, as Steadman had complied with the terms of the lease for the first year and entered on the second, there could be such a breach of the terms of the lease (for instance by the non-payment of rent, on the 1st of· April, 1873), as would work a forfeiture before the 1st of January, 1874. As to whether there really was a forfeiture of the lease, on the 1st·of April last, or that there could be none until the 1st of January, 1874, is a matter which, from the view I entertain of the controversy between the assignee and the defendants, may be laid aside. But if it were essentially necessary for me to consider the question, and arrive at an opposite conclusion, I should do so with that distrust which I feel would

not be unbecoming in a single judge when differing from a court so eminent as the supreme court of Georgia.

Earnest discussion was had as to whether Steadman performed his covenant to insure. But this has not become a point for decision, as Spence & Porter based their right to re-enter because of the non-payment of rent. And I think the language of the supreme court of the state, when nicely weighed, indicates that this covenant was not broken when the decision was made on the 25th of February, 1873. The learned judge who pronounced the opinion said: "Provided he keep the property insured, as agreed upon and promptly pay," etc. From the hour Steadman filed his petition in bankruptcy he was divested of his estate, real and personal, in possession or in action; and the estate being assets for the payment of his debts it must, by operation of the bankrupt law, be considered in custodia legis, as fully, indeed, as if the court had the prehensory power over it. Intermediate, the filing of the petition and the appointment of and conveyance of the estate to the assignee, it is the duty of the bankrupt to protect and preserve the estate for the benefit of his creditors; and if he have warning that it is threatened with invasion by strong hand, or he has knowledge of impending danger from local process, he may apply to the bankrupt court for such apprehensive remedy as may avert the approaching wrong; so he may, I apprehend, institute actions for any trespass to, or eloinment of the estate, when committed before the assignee has qualified (if the estate remain in his care); and he may do so whether he be specially designated to collect, preserve and utilize the estate or not. It is a power incident to his trust, and the assignee may afterwards come in and be made plaintiff, for the rights of the creditors—so far as they affect the title or interest which the bankrupt had in the property at the time he filed his petition—are, by relation to that time, vested in the assignee.

I am not unaware of the doubts entertained by many, of his authority to bring actions at law in the bankrupt court, under the circumstances instanced. It has been held (Jones v. Leach [Case No. 7,475]; In re Bowie [Id. 1,728], and often by this court) that he may have an injunction to stay proceedings, which might prove injurious to the interests of parties concerned in the distribution of the estate. And I have heard no sound reason advanced why, when the claim or demand is a legal one, he cannot bring an action at law in the bankrupt court as well as file a petition or bill on the equity side of the same court, when the remedy he seeks is of an equitable nature. Before the appointment of the assignee, the bankrupt is the custodian of the estate (unless the court order it into other hands), and his fiduciary relation to the general creditors requires affirmative care on his part, to gather up, guard and preserve the estate until it is conveyed to the assignee. His trust resembles the office of a temporary administrator under the laws of this state, or of an administrator ad colligendum whose duty is to collect and keep the estate of the deceased until an administrator is appointed. Code, § 2456; Ventress v. Smith, 10 Pet. [35 U. S.] 167.

From the very act of bankruptcy the assignee has, by relation, the interest of the bankrupt in the estate; and the privity of contract between the bankrupt and his creditors being from that time transferred to the assignee, he has the same right, in my judgment, as an administrator who has a property from the death of the intestate, and may declare generally ut de bonis suis propriis. Mr. Justice Bradley, in Goddard v. Weaver [Case No. 5,495], so succinctly and clearly states what interests vest in the assignee. that I will quote his own words: "The assignee of a bankrupt is not the assignee of his creditors, nor of all the judgments, executions, liens and mortgages outstanding against his property. He takes only the bankrupt's interest in property, nor has he right, title, or interest which other parties have therein; nor any control over the same, further than is given expressly by the bankrupt act as auxiliary for the preservation of the bankrupt's interest for the benefit of his general creditors." Unwillingness to accumulate details, has compelled me to omit adverting to some of the views presented by each of the learned counsel. But as the arguments were, from the various matters which sprung up, in some degree discursive,—though pointing toward the main controversy,—I thought it due to them to dwell somewhat on the way before passing to the cardinal question in issue.

I will compress into a single sentence much of the scattered preceding data. Steadman was adjudged a bankrupt on the 22d of March, 1873; on the 27th he was appointed to superintend the running of the mills. etc., until the appointment of an assignee; on the 15th of April he was expelled from the premises, by the sheriff, and Spence & Porter put in possession; on the 26th of April the assignee was appointed by the judge, and on the 3d of May he demanded of Spence & Porter the possession of the lands, tenements, etc., described in his petition (of which I have given a summary), filed in this court on the 9th of May last. They refused to answer the demand, and still hold possession. At the unsuccessful meeting of the creditors, on the 12th of April, they were present and proved debts before the register. The court has no information whether the bankrupt had any knowledge, or notice whatever, of an intention to remove him. But, suppose he had notice,—timely notice,—and did not make application to this court for preventive process; or, if he was clothed with authority by the fair intendment of the bankrupt act, to institute proceedings at law against those who had dispossessed him, and he did not avail himself of a remedy, does either of these negative misprisions justify or excuse the conduct of Spence & Porter? I will endeavor to answer.

Woods, J., in McCan v. Norton [Case No. 8,677], decided in the United States circuit court, at New Orleans, November term, 1871, after quoting the first section of the bankrupt act, said: "The exercise of the powers thus broadly conferred upon the bankrupt court, is inconsistent with the exercise of the same powers in any degree by a state court." In Re Vogel [Case No. 16,983], Vogel filed his petition, and returned in the inventory a stock in trade at his store of about eight thousand five hundred dollars; he surrendered to the register, and was adjudged a bankrupt. Several mercantile firms brought actions of replevin for the goods, in state courts, each writ alleging that Vogel had fraudulently obtained the goods by color of purchase; that no title passed to him, and that they claimed the goods, as owners. The sheriff removed the goods from the store, and delivered them to the several plaintiffs in the replevin suits. Subsequently the assignee was appointed and demanded the goods of them; all refused to surrender the property. He then filed a petition in the bankrupt court, stating the facts, and praying that the parties be directed to deliver to him the property so taken and received by them, or that attachments for contempt issue against them severally, for taking the property from the possession and control of the court. They answered that they owned the goods, and that they never were the property of the bankrupt. Blatchford, J., pronounced an able opinion on the questions involved, and ordered that the goods be delivered to the assignee; or, if sold by them, then that they pay the several values of the goods to him, or, in default, attachments for contempt would issue. This case came before Mr. Justice Nelson for review, and the decision of Blatchford, J., was affirmed. In the case of Freeman v. Howe, 24 How. [65 U. S.] 450, the United States marshal had levied a process of attachment upon property belonging to a party not named in the writ. The owner brought an action of replevin in a state court, and the sheriff seized the property in the hands of the marshal, and delivered it to the owner. But the supreme court of the United States held that the rightful owner could not receive possession of it by state process. In the recent case of Buck v. Colbrath, 3 Wall. [70 U. S.] 334, —a case in almost every feature like Freeman v. Howe [supra],—the court said, that whenever property is in the custody of the court, and under its control for the time being, "no other court has a right to interfere with the possession, unless it be some court which may have a supervisory control over the court whose process has first taken possession, or some superior jurisdiction in the premises."

To compel an equal distribution of the estate of the bankrupt among all his creditors is the policy and aim of the bankrupt law.

Therefore, to permit one creditor to obtain an advantage over other creditors, would not only provoke unseemly contests, but would be a fraud upon the very law itself; and, doubtless, it was to prevent this very struggle for precedence, that the law gives the title of the assignee a relation back to the act of bankruptcy,—the filing of the petition. Steadman became a bankrupt on the 22d of March, and on the 15th of April, Spence & Porter caused the warrant of the state magistrate to be executed, by putting him out and themselves in. These acts were done ten or eleven days prior to the appointment of the assignee. With these facts, and the authorities cited before the mind, how can it be said that the execution of the process withdrew the property from the custody of this court, and gave a rightful possession to Spence & Porter? But it was urged, on their part, that the condition in the lease being broken by Steadman, on the 1st of April, 1873, the estate reverted to them on their re-entry on the 15th of April, under a state process; that notwithstanding he was a declared bankrupt at the time of the re-entry, he, nevertheless, continued their tenant—tenant at sufferance—until they removed him. The argument cannot be defended, for whatever estate he had in the premises on the 22d of March (and the lease was then current), passed absolutely into the custody of the law and under the control of the bankrupt court. Suppose there were a condition annexed to a lease that the terms shall be void on the bankruptcy of the lessee, and that the lessor may re-enter for the breach, and the lessee files his petition in the bankrupt court under the act of March 2, 1867, and avers, in his inventory or schedule, that the very premises so leased are in his possession and enjoyment; and, though he might be mistaken in his tenure, or believe that the condition was illegal or contrary to public policy, or he may contemplate a fraud, still the lessor could not evict him and regain the possession by state process; he must seek his remedy in the national court. It may be said to be a hardship to compel the lessor, in such a case, to pursue his right in a federal, instead of a state court, when the end might be obtained as well in the latter. as in the former tribunal. But congress must possess the choice of means and must be empowered to use any means which are in fact conducive to the exercise of a power granted by the constitution, for example, "to establish uniform laws on the subject of bankruptcies throughout the United States." Const. art. 1, § 5. At the time Steadman was dispossessed of the possession of the property it was in the custody of this court, and any interference with it, unless by the permission of this court, was a contempt of its authority, and I so decide. Therefore, the said David W. Spence and Oliver S. Porter, must, within twenty days

from the entry of an order on this decision, deliver to the assignee the identical lands and tenements, and all other property and effects of every kind and description so taken. In default thereof, attachments must issue as prayed for.