## Case No. 13,938.

### In re THOMPSON.

[13 N. B. R. 300; [1] 2 N. Y. Wkly. Dig. 4.]

District Court, E. D. Michigan. 1876.

BANKRUPTCY—MONEY IN POSSESSION OF BANKRUPT —WHAT ENTITLED TO RETAIN.

1. Where the assignee petitions for an order that the bankrupt pay over to him the proceeds of a mortgage negotiated two days before filing the petition, held, that the bankrupt was entitled to retain therefrom: First. The amount paid his counsel for preparing his petition and schedules. Second. Such amount as the assignee should determine to be necessary for the temporary support of himself and family, not exceeding, with his furniture and other articles, the sum of five hundred dollars; but that he was not entitled to retain the probable expenses of procuring his discharge.

[2. Cited in Re M'Kenna, 9 Fed. 29, to the point that a summary petition by the assignee, and not a plenary suit, is the proper remedy against the bankrupt to recover property illegally withheld by him.]

[3. Cited in Re Jessup, 19 Fed. 96, to the point that the bankrupt, after filing his petition, has no right to sell any of his property even to raise money to pay lawful fees.]

On petition by the assignee, for an order that the bankrupt [James Thompson] pay over to him the proceeds of a certain mortgage, negotiated by the bankrupt prior to his adjudication. Thompson was adjudicated a bankrupt upon his own petition, on the 10th of June, 1875. Two days prior to this, and upon the same day the petition was drawn and verified, Thompson raised one thousand dollars, by a mortgage upon certain real estate, of which he paid one hundred and ten dollars to his counsel for drawing his petition and schedules, and the residue to his wife.

[1] [Reprinted from 13 N. B. R. 300, by permission.]

The assignee petitioned for an order that he should account for and pay the same over to him. It was not disputed upon the argument, that the money was still under the control of the bankrupt.

F. H. Lewis, assignee, in person.
Eldredge & Walker, for bankrupt.

BROWN, District Judge. By section 5044, the title of the assignee relates back to the commencement of proceedings in bankruptcy. As the money was obtained by the bankrupt prior to the filing of his petition, there can be no doubt that the assignee is entitled to it, under the provision of the above section, unless, by virtue of some other provision of the law, the bankrupt may devote it to other purposes.

First. As to the item of one hundred and ten dollars, paid counsel for drawing the petition and schedules, it is claimed that as the payment was actually made at the time the services were performed, the bankrupt cannot be compelled to repay the amount to the assignee, notwithstanding the fact that his counsel was not entitled to priority of payment from the assets of the estate. It was held by this court in the Case of Gies [Case No. 5,407], that attorneys of a voluntary bankrupt are not entitled to payment from the assets, as preferred creditors, for their services to preparing the petition and schedules; but it was intimated that the attorney might demand and receive a reasonable compensation before rendering his services, and that the payment therefor would be valid. Upon further reflection, I am satisfied that the bankrupt has a perfect right to employ counsel for the purpose, and if necessary to raise the money and pay him, and that such payment ought not to be regarded as a preference, or as made in fraud of the act. The preparation of the petition and schedules is frequently a work of considerable difficulty. It might be impossible for the bankrupt to prepare them himself, without the employment of competent counsel, and he thereby be prevented from having himself adjudicated as such. The entire bankrupt system is based upon the theory that a business man, finding himself insolvent, ought to make public announcement of the fact, and have his property distributed equally among his creditors. The creditors themselves are interested in having their debtor declared a bankrupt, and in having a full disclosure of his debts and assets. As the payment in this case was made at the time the services were rendered, I see no ground upon which it can be claimed as a preference. An insolvent person is not debarred by his insolvency from making necessary purchases and paying for them on the spot. I see no difference in this regard between a payment for professional services and the payment of a grocer's or butcher's bill. Both are equally meritorious. Had the service been performed on credit,

and the money afterward paid to counsel the question of preference might have arisen; but I see in this case nothing more than the purchase of professional services, and the immediate payment therefor. I think the authorities fully sustain this position. See In re Rosenfield [Case No. 12,057].

Second. It is claimed that the bankrupt is also entitled to deduct from this amount the necessary expenses of procuring his discharge. The considerations above adduced do not apply to services of this nature. The creditors have no possible interest in having their debtor discharged. The debtor has no more right to reserve the cost of professional services to be rendered after his adjudication than to reserve money for any other future purpose unconnected with the support of his family. I must hold this defense cannot be maintained.

Third. The bankrupt also claims the right to reserve money enough to pay the expenses of his family for a reasonable time, and until he can again establish himself in business. Section 5045 exempts from the operation of a conveyance to the assignee "the necessary household and kitchen furniture, and such other articles and necessaries of the bankrupt as the assignee shall designate and set apart, but altogether not to exceed in value in any case the sum of five hundred dollars." This exemption may undoubtedly include provisions and such other articles, not being land or luxuries, as are necessary for the maintenance of a family. Whether it may include money has been much mooted, and the decisions are in irreconcilable conflict. All the authorities upon this subject, so far as I am acquainted with them, are collated in the opinion of Judge Lowell, of the district of Massachusetts, in the Case of Hay [Case No. 6,253], and the conclusion reached, that the assignee may designate a sum of money as necessaries, under the statute. With much doubt whether the rule of ejusdem generis ought not to be applied to exclude from the category of necessaries everything which is not actually used in housekeeping, I have come to the conclusion that it is more consonant with the spirit of the bankrupt law [of 1867 (14 Stat. 517)], and with the modern policy of the several states upon the subject of exemptions, that this clause should receive the liberal construction claimed by the bankrupt. The same word similarly used in the act of 1841 [5 Stat. 440], was held by Judge Story, in the Case of Grant [Case No. 5,693], to include money necessary for the temporary support of a family. It is hardly just to say that one man who has laid in a supply of fuel and provisions shall be entitled to more consideration than another who has been equally unfortunate but less provident; and that the creditors of the latter should have the benefit of the money which he might have expended in the purchase of the same articles. I think, too, the use of the word "necessaries"

in the admiralty law, as including the money used in the purchase of necessaries, furnishes a strong analogy. In all cases, however, where it is held that money may be set apart, the necessity—that is, whether the condition and circumstances of the bankrupt require the exemption of money—is first to be determined by the assignee, subject to the final decision in the court upon exceptions. In a note to Hay's Case it appeared there was evidence tending to show that the bankrupts had earned something since the bankruptcy; that two of them had no family depending upon their exertions, and were skilled workmen; that the wife of the third had some little property, and that the assets were small compared with the debts. The judge sustained the action of the assignee in refusing the exemption. In another case it appeared that the bankrupt and his family had suffered much from illness; that a large part of their clothing and bedding had been destroyed through fear of infection; that he was an old man, and his assets were considerable. An allowance was thereupon ordered. As it does not appear in the present case whether since the adjudication, the bankrupt has been engaged in profitable employment, or has been able to support himself and family, I think the question of exempting money must be left primarily to the judgment of the assignee upon the best information he can obtain, subject to the review of the court.

It results that an order must be made requiring the bankrupt to pay over to the assignee the amount realized by the mortgage, less the sum of one hundred and ten dollars paid to his counsel for services in preparing the petition and schedules, and less such further sum as the assignee may determine to be necessary for the temporary support of the bankrupt and his family, not exceeding, with his furniture and other articles, the sum of five hundred dollars.