## In re JESSUP, Bankrupt.

*(District Court, S. D. New York.    January 10, 1884.)*

1. BANKRUPTCY—DISCHARGE—SECTION 5110, SUBD. 2.
    Where a bankrupt, after his adjudication, but before the appointment of an assignee, sold a piano which he had included in his schedules of property, received the proceeds, and paid them from time to time in part for fees to his attorneys for use in the bankruptcy proceedings, *held,* this act was in violation of subdivision 2, § 5110, Rev. St., and forfeited his right to discharge.

**2. SAME—SALE OF PROPERTY AFTER PETITION FILED.**

The bankrupt, after filing his petition, has no right to sell any of his property even to raise money to pay lawful fees.

Bankrupt's Discharge.

*J. W. Culver,* for the bankrupt.

*P. & D. Mitchell,* for opposing creditors.

BROWN, J.   The only objection which is available to the opposing creditors is that in relation to the sale by the bankrupt of a piano belonging to him at the time of his petition in bankruptcy, and included in the schedules filed by him.   The exact date of the sale is not in proof; but as the bankrupt has failed to show that the sale of it was prior to his petition, and as it is included in the schedules filed by him, it must be assumed to have been made after the filing of his petition and schedules in 1877.   Section 5110, subd. 2, provides that "a discharge shall not be granted if the bankrupt has been guilty of any fraud or *negligence* * * * in the delivery to the assignee of the property belonging to him at the time of the presentation of his petition and inventory, except such as he is permitted to retain under the provisions of this title, or if he has caused, permitted, or suffered any loss, waste, or destruction thereof."   The piano was not an article which the law authorized the bankrupt to retain.   He sold it to the Chickerings, according to his own testimony, for about "$240 or $250—,might have been $200."   He says he applied the proceeds to pay for "legal proceedings in this bankruptcy proceeding;" that he paid it to his attorneys.   "*Question.* All that you got for the piano?   *Answer.* I don't recollect, as I paid by installments,—sometimes one amount, sometimes another, as the case demanded."   The evidence of one of his attorneys shows various payments to the register, clerk, and marshal during the pendency of the bankruptcy proceedings, amounting altogether to about $150.

The sale of the piano by the bankrupt after the filing of his petition was a plain violation of subdivision 2 of section 5110.   It makes no difference whether the sale was before the appointment of the assignee or after.   Before the appointment of an assignee the bankrupt was himself a trustee in respect of his property for the benefit of his creditors; he was bound to preserve it for delivery to the assignee when appointed.   *March* v. *Heaton,* 1 Low. 278; *In re Steadman,* 8 N. B. R. 319.   The resolution for a composition not having been presented to the court for approval for a long period, the delay of the bankrupt in this respect, as well as his acts in the mean time, were entirely at his own risk.   When, in 1883, after slumbering nearly six years, the composition proceedings were revived, presented to the court, disapproved, and set aside, and an assignee appointed, this revival of the old proceedings could not be available for the bankrupt's discharge, except on the condition that his acts in the mean time had not violated any of the provisions of section 5110.

Even if the sale of the piano, or of other property, after filing his petition and schedules, for the purpose of defraying expenses of bankruptcy proceedings, could in any case be justified, the explanation in this case is not sufficient, since it does not cover the whole proceeds, taking as it stands every word of the testimony given by the bankrupt and his attorney on that subject. While a portion of the expenses testified to might doubtless have been allowed out of the proceeds of the estate, it does not appear that this would apply to all or even the major part of the expenses testified to. It is plain, also, from the bankrupt's testimony, that there was no specific application of the proceeds of the piano to these expenses; but that, having got from $200 to $250 by this sale in 1877, he afterwards, as the proceedings in bankruptcy required,—most of which have been within a year past,—paid to his attorneys such sums as they demanded. I would not intimate, however, that a bankrupt, after having filed his petition and schedule, may dispose of his property even for the payment of bankruptcy fees. Such a course is incompatible with the rights of the assignee, would be liable to manifest abuses, would raise embarrassing questions concerning the manner and *bona fides* of such sales and the disposition of the proceeds, and is, I think, wholly inadmissible; and it is, also, so far as I have found, wholly unsupported by any authority. The provisions above quoted very plainly forbid any such disposition by the bankrupt, and make it his duty to turn over all the property belonging to him at the time of the presentation of his petition and inventory to his assignee, unless that is superseded by a composition approved by the court. The advice of counsel is, in such a case, no defense; nor is the absence of a fraudulent intent material. The statute declares the "discharge shall not be granted if he has been *negligent* in such delivery, or has caused or suffered any loss or waste of his property." I must hold his acts in regard to the sale of the piano unauthorized and unlawful, and such as section 5110 visits with a denial of his discharge. *In re Finn*, 8 N. B. R. 525; *In re Thompson*, 13 N. B. R. 300.

The discharge cannot, therefore, be granted.