In the matter of Francis M. Winne.

---

### In the Matter of FRANCES M. WINNE, an infant.

(GENERAL TERM, EIGHTH DISTRICT, FEBRUARY, 1870.)

The estate of tenancy by the curtesy, survives to the husband on the decease of his wife, in all her real property, to which it would have attached at common law, and over which she has not exercised the power of disposition given by the married women's act of 1848 and 1849.
So held, reversing the decision at Special Term in this case.

APPEAL from the Niagara Special Term. The land in question descended to the petitioner from her mother, and the application was for a sale. The petitioner's father was still living. All the facts requisite, by the common law, to create an estate by the curtesy in the father existed in the case; and he claimed such estate. He was willing to unite in the sale, and take a portion of its proceeds in payment for his interest.

*S. Parsons* read the report of the referee as to the facts, and the decision of the Special Term, and submitted the question of title to this court.

Present—MARVIN, BARKER and DANIELS, JJ.

By the Court—MARVIN, P. J. I have read the opinion of Brother LAMONT in this case, and the opinion of Justice POTTER, in. *Billings* v. *Baker* (28 Barb., 343). These opinions are able and exhaustive; but I am not quite satisfied by

them that the wrong conclusion was reached in *Clark* v. *Clark* (24 Barb., 581), in which I followed *Hurd* v. *Cass* (9 Barb., 366). We are all agreed that the statutes of 1848-9, for the more effectual protection of married women, effected a great change in the law. How great and extensive is the question.

With a view to a proper understanding of the statutes, and the change effected by them, it is important that we know what the law was prior to their enactment. It is claimed that these statutes have annihilated that interest in property known as an estate by curtesy. The facts constituting this estate are, that the husband survives the wife; that she was seized of an estate in fee simple, or fee tail, of lands or tenements during the coverture; that she has had issue by the husband, born alive, and capable of inheriting the wife's estate as her heir. When these facts exist, the husband, on the decease of his wife, will hold the estate during his life as tenant by the curtesy. Such was the law prior to the statutes referred to. The writers, upon the common law, agree that four things were necessary to constitute this estate; marriage, seizin by the wife, issue, and the death of the wife; and they agree that the birth of issue makes the husband's title by curtesy *initiate;* and the death of the wife *consummates* the estate. Coke says: " The fourth and last requisite to make a complete tenant by the curtesy is the death of the wife, which consummates the estate already commenced, and renders it indefeasible." (Co. Litt:, 30 ; Crabb's L. of Real Prop., § 1092.) Justice LAMONT seems to be of the opinion that the title by curtesy *initiate* is the same as when *consummate*. That there is really no difference ; and the conclusion to which he comes is founded mainly upon this theory. I think this position is unsound. He cites some authorities to show that when the title is *initiate*, the husband may dispose of the estate, and that it may be taken by his creditors, and held during his life.

Admitting that the husband may make a valid grant of the estate initiate, and that the grantee may hold during the life of the husband, it does not follow, I think, that initiation of

the estate is equal to a consummated estate. It may well be that the grantee would take an estate during the life of the husband, there being no limitation in the grant.

The grantee would take all the estate the grantor had, and it should be kept in mind that the grantor had an estate for the joint lives of himself and wife. This would pass by the grant, and whatever other interest he had. If there had been living issue of the marriage, capable of inheriting from the mother, then two of the four things necessary for the creation of the estate would have happened, viz.: Marriage, and the birth of issue; and if the wife was seized, then there would remain only the death of the wife to create the estate. There can be no such thing as a tenant by the curtesy, until the death of the wife. Coke says, "Albeit the estate is not consummate until the death of the wife, yet the state hath such a beginning after issue had, in the life of the wife, as is respected in law for divers purposes." (Co. Litt. 30, *a.*) And he proceeds to state what those purposes are, or rather what the husband may do. He shall do homage alone; and he becomes tenant to the lord; and if he makes a feoffment in fee, and the wife dies, the feoffee shall hold it during the life of the husband; and the heir of the wife shall not, during his life, recover it, for it could not be a forfeiture, for that the estate at the time of the feoffment, was an estate of tenancy by the curtesy initiate, and not consummate. The heir of the wife would not complain of the feoffment, for upon the death of the wife the estate by curtesy became consummate — complete. The heir could only interpose when the tenant did some act by which the estate was forfeited. (See Crabb's L. of Real Prop., § 1,091.)

"Curtesy is considered in many respects as a continuance of the wife's estate, and the husband takes it after her death, with all the incumbrances which would affect it in her possession if she were living." (Crabb's L. of Real Prop., §§ 1110–1075; Roper on Husband and Wife, 35.) I agree with Brother Lamont, that the husband does not take by descent from his wife. His estate is simply that which

the common law made it. I do, however, insist that there could be no such thing as a tenant by the curtesy, or an estate by the curtesy, until the death of the wife. That the husband, upon the birth of issue had some rights, and that some feudal duties were imposed upon him, is true.

These feudal duties do not exist at this time with us, and I do not understand that, in this state, the rights of the husband, as to his control over, and enjoyment of, the real estate of his wife is, by common law, any greater after issue of the marriage, than before, for the time of the joint lives of himself and wife. Upon the marriage he becomes seized of the freehold *jure uxoris*, and takes the rents and profits during their joint lives. (2 Kent Com. 130.)

The estate is a freehold in the husband to continue during the joint lives of himself and wife, and it may continue longer than the life of his wife, if he survives her. This depends upon the happening of the events requisite to constitute him tenant by the curtesy. The birth of issue is not enough to create this estate. It is properly enough called *initiate* upon the birth of issue, as an event has happened, which, with another event, may create a new or other estate than that which would be terminated by the death of the wife, viz, the estate by curtesy to continue during his life, after the death of his wife, the other event necessary to creation of the estate by curtesy. So long as the wife lives the husband is not tenant by curtesy, and he may never be. If he first dies there has been no such thing as tenancy by the curtesy. He has had a freehold estate during his life *jure uxoris*.

I have examined the cases cited by Justice LAMONT, and upon which he places much stress, and from which he argues that there is really no difference between the tenancy *initiate* and *consummate*. It is not necessary to note the cases here. They are, as he claims, to the effect that the estate of the husband may be sold on execution, and if it has become a tenancy by the courtesy *initiate*, the purchaser will hold the estate during the life of the husband though he survives his wife, as against the heirs of the wife.

In the matter of Frances M. Winne.

Since the statutes of 1848 and 1849, to be noticed hereafter, the husband has no interests in the lands of his living wife, and there can be no sale of the lands by virtue of an execution against the husband, hence, it is supposed, that the tenancy by courtesy is abrogated.

At the time these sales were permitted, the husband had a freehold *jure uxoris*, now by the statute abolished, and he may have been tenant by the courtesy *initiate*, and it is to be kept in mind that all *legal* interests in land could be sold by virtue of the judgment and execution. Whatever *legal* title or estate the husband had was bound by the judgment. His freehold estate *jure uxoris* could be sold and the sale would include whatever other or additional legal interest he had in the land. In short he was deprived by the sale of all the legal interest he had in the land. If he was tenant by the curtesy *initiate* and should survive his wife so that the ten·ancy would become *consummate*, this estate, for the life of the husband, would be vested in the purchaser upon the execution sale. The sale, by virtue of the judgment and execution would give to the purchaser the same title which the husband could, by grant, give to his grantee. The heirs of the wife would have no right to complain. If the land had not been sold or granted, the surviving husband would have held it during his life, and the purchaser at the sale on execution, or the grantee of the husband, could hold it no longer. The statutes of 1848 and 1849, have taken away this right of the creditor of the husband, and all control by the husband, over the property of his wife during her life; and this brings us to the question, has the husband any right in or to the real estate of his wife, after her death, she having died seized and intestate? The title of the act of 1848 (Session Laws, p. 307, ch. 200), is " An act for the more effectual protection of the property of married women," and, by section one, it is declared that " the real and personal property of any female who may hereafter marry, and which she shall own at the time of marriage, and the rents, issues and profits thereof, shall not be subject to the disposal of her husband, nor be

liable for his debts, and shall continue her sole and separate property, as if she were a single female."

The third section authorizes any married female to receive by grant, devise or bequest, from any person other than her husband, and hold to her sole and separate use, as if she were a single female, real and personal property, and the rents, issues and profits thereof, and the same shall not be subject to the disposal of her husband, nor be liable for his debts. By the act of 1849, ch. 375, the third section is so amended as to include a taking by inheritance, and confers the right "to convey and devise her real and personal property, and any interest or estate therein, and the rents, issues and profits thereof, in the same manner, and with the like effect as if she were unmarried, and the same shall not be subject to the disposal of her husband, nor liable for his debts." Here we have the statutes changing the common law. The language of the statutes is unambiguous, and its construction is not difficult. The statutes give to the *married* woman the sole and exclusive use of her property; she may do with it as she pleases. She may grant or devise her real estate. Her husband, *as* husband, has no rights in her property during the time she is his wife — a "married female." And if it is absolutely necessary that the estate known as tenancy by the curtesy, must have a commencement — be vested — during the life of the wife, and that the legislature could not abolish those elements or qualities of this estate, which by the common law must have existed before the death of the wife, without destroying the estate in toto, then I conceed that the husband cannot be tenant by the curtesy after the death of his wife. I think it will not be denied that the legislature possessed the power to deprive the husband of all rights, *jure uxoris*, and as tenant by curtesy *initiate*, and still preserve the right of the husband to the tenancy by curtesy consummate. As the wife has the power to alienate and devise her real estate, it is agreed that this proves that the legislature intended to abolish entirely any right in the husband to enjoy the estate after her death, though she should not have

In the matter of Frances M. Winne.

conveyed or devised it. The intention of the legislature is often a question for argument, arising out of the language employed in the act, but when the language is clear and undoubted, there is no room for construction. The act, as a law, is simply what its language makes it. If it is an act which changes the law, the question then is what change has the act made, and having determined this, the question is solved; the law, so far as it is unchanged, remains in force. If the new law is inconsistent with the prior law, then the latter is abrogated. It is a rule, very important in practice, that it is not to be presumed that the legislature intended to make any inovation upon the common law that the case did not require. The repealing of laws by implication is not favored. The language of the acts in question is confined to "married women." The title of the act relates to the protection of the property of "married women." The provisions of the statutes relate to the rights and acts of the "married woman" during the *marriage*. The husband is deprived of any right in, or control over, the property of the *married woman*, or female. The statutes are entirely silent touching the real estate upon the death of the married woman or female intestate; and the question of tenancy by the curtesy arises between the man who *was* husband, and the heir of the deceased wife. By the common law the estate of the wife was *continued* in the surviving husband. He did not inherit it or take it by descent, but under a certain state of facts, the wife's estate was continued in the husband, during his life, to the exclusion of the heir of the wife. The estate was peculiar. It was such as the common law made it. I will agree that the statutes we are considering are *remedial*, but how does this aid us? Is there anything in them showing by implication or otherwise, that the legislature preferred that the heir should come, at once, into possession of the estate, instead of the surviving husband? How can we say that the whole policy of the legislature was not accomplished by giving the married woman exclusive control over the property, with the right to convey or devise it? The power is given to her to

deprive her husband of any interest in her estate after her death. She can devise it to her heirs.

I will agree with Justice POTTER, *Billings* v. *Baker* (28 Barb. 374), that for the purpose of ascertaining the *intention* of the legislature in these statutes, the language employed should be construed in the same manner as similar language used in a devise, marriage settlement, or trust estate created for the same purpose; and that the manifest intention in both should be the criterion to determine.

This brings me to a re-examination of two or three cases referred to by MASON, Justice, in *Hurd* v. *Cass*, and very briefly noticed by me in *Clark* v. *Clark*, and Justice POTTER has referred more fully to the cases. I thought they were authority for Justice MASON's decision, which I followed. The first case in order of time, *Roberts* v. *Dixwell* (1 Atk. R., 607), Sir Thomas Sandys, by his will, directed his trustees to convey certain freehold lands to the use of his daughter, Priscilla, for and during the term of her natural life, so that she alone, or such persons as she should appoint, should take and receive the rents and profits thereof, and so that her husband was not to intermeddle therewith, and from and after her decease, in trust for the heirs of the body of the said Priscilla for ever. It is stated in the case that the principal question was whether this was a trust estate or executory or executed, for if executed Priscilla was then tenant in tail, and her husband entitled to be tenant by the curtesy.

Priscilla was dead, but the chancellor considered what kind of estate the trustees ought to have conveyed to her if she had been living; whether in tail or to her for life, and he came to the conclusion that the conveying of an estate tail would have defeated the intention of the testator. He says if the wife had been entitled to an estate tail, I do not see but the husband must have been tenant by the curtesy. He remarks upon the objection that there was no *seizin* in the husband and wife, and has no difficulty in answering it. He refers to Coke as saying that to make a tenancy by curtesy there ought to be a right in the husband inchoate in

In the matter of Frances M. Winne.

the life time of the wife, but that he does not say that he should be seized of the rents and profits. The lord chancellor then says : I think that if this had been an estate tail he would have been entitled to be tenant by the curtesy, notwithstanding this court, by their authority, might have prevented the husband from intermeddling with the rents and profits, during the life of the wife. The chancellor came to the conclusion that the wife could not take an estate tail, but an estate for life only.

The next case is *Hearle* v. *Greenbark* (3 Atk., 695). A father devised to trustees, upon trust, that they should apply the rents, issues and profits, to and for the sole and separate use of his then married daughter during her life, and at her disposal, and not to be subject to the debts, power or control of her husband; but that her receipt, notwithstanding her coverture, should be effectual for the same ; and upon further trust, that they should permit and suffer his daughter, by any deed or writing executed, &c., to give, devise and bequeath all his said freehold estates, &c., to such person or persons as his daughter should think fit.

The daughter had issue by her husband. She executed the power given her by the will of her father while she was an infant; and upon her death the questions were, was her execution of the power valid, she being an infant; and if not valid, was her husband tenant by the curtesy ? It was held by the lord chancellor that the execution of the power was not valid; and that the husband could not be considered as tenant by the curtesy ; that, under the will of the father, the rents and profits were to be applied to the sole and separate use of the daughter; and the trustees, who had the fee in all the testator's real estate, were to permit and suffer her to dispose, &c.; that a husband may be tenant by the curtesy of a trust; but to make a tenant by the curtesy, the wife must have the inheritance ; and there must likewise be a seizin in deed in the wife during coverture. It was true she had the inheritance, because it descended till the execution of the power ; but then the father, whose estate it was, had

made the daughter a *feme sole*, and had given the profits to her separate use; therefore, what seizin could the husband have during the coverture? He could neither come at the possession or the profits. Was there, then, any equitable seizin of the husband? None at all; and to admit there was, would be directly contrary to the father's intention; and, therefore, neither in law or equity was the husband tenant by the curtesy. These are the two cases which, it is said, in *Morgan* v. *Morgan* (5 Madd., 408), were irreconcilable; and Kent, in his commentaries (vol. 4, p. 31), says the opinions are conflicting and cannot be reconciled.

Brother POTTER (28 Barb., 371), considering the cases in reference to the intent of the testator, is unable to see any conflict in them. It is true, in both the cases the husband was not allowed to be tenant by the curtesy; but in the first case, it was upon the sole ground that the wife took an estate for life only, and, of course, there could be no tenant by the curtesy. But the lord chancellor, in his opinion, distinctly says that a devise to the wife, for her separate use, will not bar the husband of his tenancy by the curtesy, because there is a sort of seizin in the wife; that if it had been an estate tail, the husband would have been entitled to be tenant by the curtesy, notwithstanding the court might have prevented the husband from intermeddling with the rents and profits during the life of the wife. In the latter case (*Hearle* v. *Greenbark*) the chancellor excluded the husband on the sole ground that he had no seizin in law or equity, as the father made the daughter a *feme sole*, and gave the profits to her separate use; whereas, in *Roberts* v. *Dixwell*, the chancellor had said, that a devise to the wife for her separate use would not bar the husband of his tenancy by the curtesy, "because there is a sort of seizin in the wife;" and he cites Coke as saying, that to make a tenancy by the curtesy there ought to be a right in the husband inchoate, in the life of the wife; but the chancellor adds he (Coke) does not say that he should be seized of the rents and profits.

Now I admit, what the chancellor said in this case as to

the husband's being tenant by the curtesy, when the devise is to the wife for her separate use, was *obiter*, as he had held that the estate of the wife was only for her life; but that the two opinions are in conflict is, to my mind, entirely clear; and KENT, with his usual accuracy, was entirely right when he said the *opinions* are conflicting and cannot be reconciled.

Let us now examine a later case. (*Morgan* v. *Morgan*, 5 Madd. R., 408; see Crabb's L. of Real Prop., § 1108.) The estate was, by marriage settlement, conveyed to trustees in fee, upon trust, for the separate use of the wife, with power for her to make an appointment; and she made no appointment. It was held the husband was entitled to curtesy; and it was laid down as a rule, that whenever the wife, during coverture, had an equitable estate of inheritance, and had issue by the husband capable of inheriting the estate, the husband would be entitled by curtesy, unless it appeared to be the express intention of the settler to exclude him from the privilege.

Justice POTTER attempts to reconcile, and perhaps does, these cases as being controlled by the ascertained intent of the testator or settler; and I shall make no objection to the controlling element of *intent* in all the cases, and in the statute. But the question constantly recurs, what was the *intent* of the legislature. We have no means of knowing the intent of the legislature, except from the language used in the statutes; comparing it with the language used in cases that have arisen and been decided, and keeping in mind certain rules of construction when a statute changes the previous law. It may be well to remark that in *Hearle* v. *Greenback* there is a long history connected with the marriage of the testator's infant daughter, and of the conduct of her husband, and of the separation, and the lord chancellor had no doubt of the intention of the father to exclude his son-in-law from tenancy by the curtsey; and we know that, for the purpose of ascertaining intention, we often construe the language used in the light of surrounding circumstances, when it will admit of different constructions, and this rule is often resorted to in

construing wills. But to return to the point, *Morgan* v. *Morgan* is a clear authority for the position in the absence of facts requiring or justifying the finding of other intention, that the husband of a wife, seized in equity of an estate of inheritance to her sole and separate use, with full power to dispose of the same, she dying without disposing of it, and having had issue by her husband; is entitled to be tenant by the curtesy. It may be well to make an extract from the opinion of the court: "At law the husband cannot be excluded from the enjoyment of property given to or settled upon his wife; but in equity he may, and this not only partially, as by a direction to pay the rents and profits to the separate use of the wife during coverture, but wholly, by a direction that, upon the death of the wife, the inheritance shall descend to the heirs of the wife, and that the husband shall not be entitled to be tenant by the curtesy. Such a provision was actually made in the case of *Bennett* v. *Davis*, and was acted upon by this court. Here the husband is partially, not wholly, excluded from the enjoyment of his wife's property. This court would, according to the intention of the settlement, have restrained him from all interference with the rents and profits during the life of the wife; but there being no further exclusion expressed in the settlement, the court can have no authority to restrain him from the enjoyment of his general right as tenant by the curtesy in the equitable inheritance of his wife."

I do not understand that the statutes of 1848 and 1849 exclude the husband beyond the life of the wife, or that they require or will justify us in holding that the legislature *intended* to bar the husband of his curtesy where the wife dies intestate, and without having conveyed her estate. The statutes do not say so, and it is begging the whole question to say that the legislature *intended* the heirs of the wife should take the estate immediately upon her decease, instead of her husband during his life. Such construction is also a forgetting or disregarding of the rule that the common law is not changed by a statute any further than a fair construction of the statute

In the matter of Frances M. Winne.

requires, and that a change or repeal by implication is not favored. We have seen that when the wife has the sole and exclusive rents, profits and use of the estate, and the power of appointment, or disposal, and does not exercise such power, the husband, upon her death, takes it as tenant by the curtesy. He has, during her life, been entirely excluded. He was not tenant by the curtesy *initiate* so far as his creditors, or his power of alienation, or his feudal rights and obligations were concerned. As to the feudal rights and duties, as mentioned by Coke, they have never had any application in this state. In England, in equity, they are entirely disregarded, and it is not necessary that seizin in the wife, one of the four requisites, should actually exist. It is enough, if she is entitled to the rents and profits, and actually receives them, the legal estate being in trustees. Kent, in view of the cases says, it is now settled that the husband is tenant by the curtesy if the wife has an equitable estate of inheritance, notwithstanding the rents and profits are to be paid to her separate use during coverture; that the receipt of the rents and profits are a sufficient seizin in the wife. He adds, and if lands be devised to the wife, or conveyed to trustees for her separate and exclusive use, and with a clear and distinct expression that the husband was not to have any life estate or other interest, but the same was to be for his wife and her heirs ; in that case the Court of Chancery will consider the husband a trustee for the wife and her heirs, and bar him of his curtesy; citing *Bennett* v. *Davis* (2 P. Wm., 316 ; 4 Kent's Com., 31.) The case of *Bennett* v. *Davis*, was, the father devised land, held in fee, to his daughter, then married, for her separate and peculiar use, exclusive of her husband, to hold the same to her and her heirs, *and that her husband should not be tenant by the curtesy, nor have the lands for his life, in case he survived his wife, but that they should upon his wife's death go to her heirs*. As in this case the estate in fee vested in the wife, the husband at law, would at once take a freehold during the joint lives of himself and

wife, and as he was a bankrupt the assignee in bankruptcy would take his estate, the court, however, held that, as the testator had the power to devise the premises to trustees for the separate use of the wife, in compliance with the testator's declared intention, the court would supply the want of trustees, and make the husband a trustee, and as the assignee in bankruptcy could have no better right than the husband, it was decreed that he join with the husband in a conveyance to a trustee for the separate use of the wife.

This is the case to which I briefly referred in *Clark* v. *Clark* (24 Barb., 582), citing also Crabb on R. Prop. (§ 1,106), and remarking that if the legislature had intended to deprive the husband of his rights by the curtesy, when the wife had not conveyed or devised the estate, it should have so expressly declared in the act.    Brother POTTER (28 Barb., 354), says : The authority, cited by me (referring to Crabb on real property without noticing the reference to *Bennett* v. *Davis*, is directly against the conclusion to which I arrived, viz. : that the legislature should have declared such intention in the act, &c.    It was *Bennett* v. *Davis*, to which I referred, and the reference to Crabb was added as a statement of the case would also be there found.    I said it appeared that it was the express intention of the *testator* (printed " section "), that the husband should not be tenant by the curtesy, and he was excluded.    I certainly thought it quite pertinent to show by the decisions that when the husband was expressly excluded, he could not be tenant by the curtesy, and my argument was, that unless this clearly appeared, he was not excluded, and if the legislature intended to exclude him in the absence of any act of exclusion by the wife, it should have so expressly declared.    I admit, of course, that if the acts do, by a proper construction, debar the husband of tenancy by the curtesy, then there was no necessity of an express declaration to that effect, but I maintain that no such construction should be given to the acts.    I do not find such intention in the acts, and, in my opinion, when all the facts requisite at common law to produce this tenancy exist , and the wife dies *intestate,*

not having conveyed the land, the husband will take it for his life to the exclusion of the heirs of the wife.