PELLETREAU (UNITED STATES v.). See Case No. 16,023.

---

## Case No. 10,912.

### In re PELTASOHN.

[4 Dill. 107; 16 N. B. R. 265; 10 Chi. Leg. News, 10; 4 Law & Eq. Rep. 441; 5 Cent. Law J. 311.] [1]

Circuit Court, E. D. Missouri. Sept. 19, 1877.

BANKRUPTCY—ACCOUNTING FOR LOSSES IN BUSINESS—DEFICIT.

Where a deficit is shown in the assets of a bankrupt's estate, he must account for it by a satisfactory explanation, or pay the amount of the deficit to the assignee.

[Cited in Re How, Case No. 6,747; Re McKenna, 9 Fed. 29.]

The bankrupts were wholesale millinery merchants in St. Louis. The assignee filed a petition in the district court, representing that the bankrupts had fraudulently withheld from him goods and property to the amount of $48,000, and asking an order on the bankrupts to show cause why they should not turn over that amount of property to him. The order issued, and the bankrupts appeared and filed a sworn answer denying the charge, and stating that they had delivered to the assignee all their property and effects. The matter was heard by the district court upon the examination of the bankrupts before the register (admitted in evidence without objection, as far as the record discloses), and upon the testimony of various witnesses produced by the assignee and by the bankrupts. The testimony, including the examination of the bankrupts, covers about six hundred written pages. The bankrupts, or their wives, or the persons to whom they alleged that money had been paid just preceding their failure, were not examined as witnesses, or their depositions taken. After a hearing, which occupied several days, the district court found as a fact that the said bankrupts "have secreted, concealed, and prevented from coming to their assignee herein, property to the value of $7,762.22, belonging to the said estate, and thereupon ordered the bankrupts to pay said sum to the assignee on or before the 8th day of September, 1875." The bankrupts, on the 8th day of December, A. D. 1875, filed their peti-

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge. and here reprinted by permission. 4 Law & Eq. Rep. 441, contains only a partial report.]

tion in this court for a review of the said order. An answer to this petition was filed by the assignee, and the matter, by stipulation and agreement, was to be heard in the circuit court upon the same proofs upon which it was determined by the district court.

By consent, the case was, at the March term, 1876, of this court, referred to S. D. Thompson, Esq., one of the masters in chancery in this court, to report upon the law and the facts. The master has filed an elaborate report, in which he states that he has given to the case a thorough examination, and seems to be of opinion that the finding of the district court against the bankrupts was for a sum too small instead of too large, but as the assignee had prosecuted no proceedings for review, he recommends an affirmance of the order below, with costs, against the bankrupts. Exceptions were taken by the bankrupts to the master's report, on the single ground that it is not sustained by the proofs, and on these exceptions the cause was submitted to the court.

N. Meyers, for bankrupts.
A. Binswanger, for assignee.

DILLON, Circuit Judge. It is an admitted fact that at cost price the bankrupts had on hand, on January 1, 1873, goods to the amount of $41,740.61. They failed in November of that year. Between January 1, 1873, and their failure, they purchased goods to the amount of $81,589.53, making stock to be accounted for $123,330.14. These sums are shown by the bankrupt's books. The books show sales, for cash and on credit, during this period, to the amount of $72,503.95, at sale prices. If sold without loss or profit, the bankrupts ought to have had on hand at their failure, goods to the amount of $50,826.19. The amount actually turned over by the bankrupts to the estate in bankruptcy was $16,500 at cost price, or, including fixtures, $18,000. The difference, viz., $34,326.19, or, if fixtures be deducted, $32,826.19, is to be accounted for.

The bankrupts attempt to account for this large deficit by showing a great decline in the value of goods of this character between January 1 and November 1, and that they had to sell at great loss. Undoubtedly, the old stock—that is, the stock on hand January 1—was not worth its cost price, and sales from that were made, on the average, greatly below cost; but it is very doubtful whether there was much, if any, loss—as likely, indeed, that there was a profit—on the goods sold from the new purchases. On the whole, I am not satisfied with the explanations offered for this large and striking deficit, and I think the district court and the master were well justified in reaching the conclusions they did.

Certain circumstances, pregnant with suspicion, strongly support this conclusion. I

mention these without dwelling upon them. The change, during the time they had a bookkeeper, of their system of bookkeeping from double to single entry; the loss or non-production of two important books—"bills receivable and payable," and the "stock or sales book,"—by no means satisfactorily accounted for; the alleged increase by one-half of family expenses during 1873, and taking money therefor, without any real increase being shown; the alleged sending of money to Europe to poor relations, and payments to a relative in this country, not otherwise shown to be true than by the unsupported statement of the bankrupts—this at a time when they were claiming to be anxious to reduce expenses, and when they were embarrassed; and particularly the statement of Peltasohn, that his wife had $5,000 or $6,000, and had had since 1871, or before that, which she kept in her house in bank-bills and had never invested—the profits, as he alleged, of business which she had conducted on her own account, and which I must say, under the circumstances, is very improbable; and the further fact that since the bankruptcy the bankrupts have gone into business as the professed agents of their wives.

In short, such a case was made against the bankrupts as to call upon them to explain these circumstances of suspicion, and they have not done so. They were not even examined as witnesses on their own behalf in the district court.

The exceptions to the master's report should be disallowed, and an order should be here entered affirming the order of the district court, with costs [including the fee of the master of two hundred and fifty dollars (not excepted)],[2] and that a mandate go to the district court to proceed with the execution of the order complained of, the same as if the petition for review thereof had not been brought.

Ordered accordingly.

NOTE. The foregoing opinion, when published in the Central Law Journal, was accompanied by the following note, written by Mr. Frank, which we here insert:

"The opposition to the bankrupt law [1 Stat. 178] as it now stands, has come from the creditor-class, and there is, perhaps, but little doubt that the reasons for the opposition are substantial; yet, if the creditors of an estate would urge those provisions of the statute which will secure them their rights, in all proper cases, except in case of composition proceedings, the act would certainly not be without efficacy. The provisions referred to are sections 5110, 5132, 5104 of the Revised Statutes of the United States.

"In Re Salkey [Case No. 12,254], Judge Drummond held, affirming Judge Blodgett's decision in the same case [Id. 12,253], under the provision of section 5104, Rev. St. U. S. (section 26 of the act of 1867 [14 Stat. 529]), that the court had authority to imprison bankrupts for failure to give a satisfactory account and make a full disclosure respecting their property. The counsel for the debtors there contended that if the answers to the inquiries concerning their property were untrue, the creditors might resort to a criminal prosecution. The court replied that criminal prosecution does not pay the claims of the creditors.

"In Re Jacobi, unreported. Judge Caldwell committed to jail, at Little Rock, Arkansas, a bankrupt for not paying over to her assignee the sum of about $12,000, a deficit of that amount not having been by her satisfactorily accounted for. The bankrupt, after being imprisoned for some time, was taken before Circuit Judge Dillon, at Davenport, Iowa, on a writ of habeas corpus, who modified the order of the district court as to the amount to be paid over, as not having been satisfactorily explained, and remanded the bankrupt.

"The Case of Peltasohn, above reported, is only one of many where creditors have been imposed upon by bankrupts, because the bankrupts supposed the act to be a shield for their fraudulent contrivances, and the court clearly lays down the rule as to how a true account ought to appear; and in the absence of such an account, to what the act subject the bankrupts."