ing ended in a postponement of any injunction, till the validity or originality of the patent—they being denied—should be tried at law. On the only trial at law, before going into the question of originality, the letters patent of the plaintiff were adjudged to be bad under the act of congress, for want of certainty in the particular part, or combination, claimed to be original, and the plaintiff became nonsuit. Consequently, though in the hearing for an injunction some evidence was offered by the plaintiff to prove priority in making his machine before the defendant made his—and some knowledge of its qualities, by a workman afterwards employed by the respondent, and some apparent resemblance between them, even in defects or mistakes; and thus a strong presumptive case was made out by the plaintiff, as to originality; yet the respondent denied the originality of it, under oath, and put in several affidavits, and some models, to prove an earlier existence and general use of similar grinding machines. But whether this satisfactorily overcame the plaintiff's evidence, I did not decide. On the contrary, I expressly forbore to do it for the various reasons there stated, and continued the bill in chancery till that issue, as to originality, could be tried and settled by a jury.

Another argument is now urged against costs to the respondent, on the ground that the letter and deposition of Wilder were used to mislead, and did mislead, about the old machines and knives, in the hearing as to an injunction. It will be seen, however, that nothing decided in that hearing, or in the trial at law, could be affected by that letter and deposition, whatever was the intent in using them. But on examining them with care, is it at all certain that the ground blade, referred to by Wilder, was likely or designed to mislead; and was not a new one sent with the old machine and old knives, in order that they might be compared together? And it is clear, that "the care-worn and gray witness," to which Wilder poetically refers in his letter, was the old "machine," and not this blade. It is called "machine"—totidem verbis. It is difficult, then, to find any peculiar reason in the case, as yet appearing, or yet ascertained, which renders it inequitable to follow the general rule of allowing cost, as before explained, to the prevailing party. A different state of facts may be settled hereafter, and results reached, which may change the equities as well as law, between these parties; but until that time arrives we must be governed by the situation of things as they now stand. I came to a like conclusion, in Hunter v. Marlborough [supra], and think the exceptions to the general rule should be very few, and rest on very strong grounds. But, although nothing is yet found, by the court or jury, to justify me in refusing cost to the respondent, as inequitable in the bill for an injunction; yet I feel compelled to say, that

several matters were proved against him in that hearing, which made an impression on my mind less favorable to his claims in equity, than to those of the plaintiff. And though I formed no decisive opinion, whether other persons than these parties might have invented and used like machines earlier than either of them, and thought that I should not, for the reasons then given, form a decisive opinion till a trial at law; yet the course of the defendant was not, in some respects, such towards the plaintiff and his machine, as to entitle him to any more costs than are clearly proper under all the facts and circumstances, belonging to both cases. Hence, being obliged to travel and attend here, in the action at law, I deem it just he should not tax travel and attendance, also, in the bill for an injunction, at the same terms, between the same parties. But all the depositions taken and used in the latter case, which were pertinent, and the usual counsel fee, seem to be proper charges, necessary to his defence, and, therefore, are allowed.

## Case No. 6,747.

### In re HOW.

[18 N. B. R. 565;[1] 11 Chi. Leg. News, 141.]

District Court, D. Massachusetts. Jan. 6, 1879.

BANKRUPTCY—POWER OF COURT—ORDERS OF.

The bankrupt court has power to order a bankrupt to pay over to the assignee sums which, apparently, are in his hands.

[Cited in Re McKenna, 9 Fed. 29.]

In bankruptcy.

LOWELL, District Judge. This was a petition by the assignees in bankruptcy of Calvin How and Frank G. How, alleging that they have in their possession at the present time certain promissory notes and certain sums of money, which were part of their assets, and should have been paid over to the petitioners, and praying relief. The petition was referred to Mr. Sherman, the register having charge of the case, who has reported that the notes mentioned in the petition have been collected by Calvin How, and, upon the whole evidence, he finds in the hands of said Calvin, unaccounted for, the sum of four thousand nine hundred and ninety-five dollars and eighty-six cents, and in the hands of Frank G. How, in like manner, the sum of nine hundred dollars.

Upon a review of the evidence, I agree with the register that those sums are severally chargeable to the bankrupts as reported. It was agreed by both parties, as I understood, that the question whether the bankrupts had, in fact, lost or spent the money or part of it, since they received it, or since the bankruptcy, if received before, was not fully

[1] [Reprinted from 18 N. B. R. 565, by permission.]

examined or intended to be examined by the register. And the argument before me did not touch the point of the power of the court to punish a bankrupt, actually poor; or how such power, if possessed, should be exercised; and whether anything like a poor debtor's oath could be administered to them. All that is asked at this time is an order on the bankrupts, severally, to pay over the sums which, apparently, are in their hands.

I have no doubt of the power of the court to pass such an order. A debtor who becomes bankrupt submits himself, or is by law submitted, to the summary jurisdiction of the court. It is not necessary that the assignee should sue him in order to obtain the assets. His position is somewhat like that of an attorney, or other officer of the court, or of an accountant of the court. The cases on this point are, I believe, entirely uniform. In re Dresser [Case No. 4,077]; In re Speyer [Id. 13,239]; In re Kempner [Id. 7,689]; In re Peltasohn [Id. 10,912]. The case of In re Salkey [Case Nos. 12,253 and 12,254] is also somewhat analogous to, though not identical with this, because that was a question of the disclosure required of a bankrupt.

I shall pass the order that the bankrupts pay to the assignees the sums found by the register to be due from them, respectively, in thirty days from this 6th January, 1879.

---

## Case No. 6,748.

### HOW et al. v. KEMBALL et al.

#### [2 McLean, 103.] [1]

Circuit Court, D. Illinois. June Term, 1840.

BILLS AND NOTES — INCREASE OF LIABILITY BY INDORSEMENT — PARTIES TO THE CONTRACT — RIGHTS OF ASSIGNEE—STATUTE OF FRAUDS—CONSIDERATION.

1. An indorser of a note who increases his liability, by indorsement, beyond what the law implies, is to be considered as a guarantor. And this new contract can only be enforced between the parties to it.

2. It does not pass to any subsequent assignee. The late decisions in England require an agreement to pay the debt of another to state in it the consideration.

3. Under the statute of frauds, the consideration is a part of the agreement, which must be in writing. Prior to these decisions the rule was otherwise. And the latest decisions seem not very strictly to sustain this construction.

4. In this country the weight of authority does not coincide with the English rule. But in this case the guarantors are the holders of the note, and their guaranty is a part of the transfer of it, which imports a consideration.

[Cited in Perry v. Swasey, 66 Mass. (12 Cush.) 38; Clay v. Edgerton, 19 Ohio St. 553.]

[This was an action on a promissory note by Calvin W. How & Co. against Kemball and others.]

[1] [Reported by Hon. John McLean, Circuit Justice.]

Beaumont & Skinner, for plaintiffs.
Mr. Spring, for defendants.

OPINION OF THE COURT. This action is brought by the plaintiffs as assignees of the following note:

"On the 20th of August, 1838, we jointly and severally promise to pay James Kinza, or order, the sum of three thousand nine hundred dollars, with seven per cent. interest per annum from the date hereof, for value received of him. Mark Beaubien, Jr., Mark Beaubien, Sr. Chicago, August 20, 1837."

Indorsed:

"I assign the within note to Benjamin Harris, without any recourse on me. October 10, 1837. James Kinza."

"I hereby guaranty the payment of the within note, unconditionally. Benjamin Harris."

"We guaranty the payment of the within note, at the Chicago branch of the State Bank of Illinois. Kemball & Porter, A. Garrett, George W. Dale."

In the first count in the declaration, the plaintiffs, who are the last assignees, set out the note and the assignments, and aver that when the note became payable, the said Mark Beaubien, Jr., did not reside in Illinois, but in Michigan; and that, the 24th August, 1838, at the city of Chicago, the said plaintiffs instituted a suit on the note against Mark Beaubien, Sen., against whom judgment was entered. That execution on the judgment was issued, which was returned "No property." The second count contains the assignments, and the note, &c., as the first count. The third count contains the note, the assignments, and avers that the defendants assigned, and then and there guarantied the payment of the said note, on the day it should fall due, and payable at the Chicago branch of the State Bank of Illinois, &c. And that when the note became due suit was brought, &c. The fifth count sets out the note, the assignments, and avers that the defendants promised to guaranty, and did guaranty, the same, as above, &c. The sixth and seventh counts are substantially the same as above. The defendants pleaded the general issue. And, on the trial, an objection was made to the introduction of the note, and the indorsements thereon, on the ground that, in the first and second counts, the assignments of the note, merely, are set out, whilst the indorsements, under which the plaintiffs claim, is a guaranty to pay the note at the Chicago branch of the State Bank of Illinois. And this guaranty, it is contended, is not evidence under the other counts, because the action is not brought on it, and no consideration for the guaranty appears either on its face, or from the averments in the declaration.

The indorsement of the note by the defendants to the plaintiffs, is not a mere assignment of the note, but the indorsers guaranty