## *In Re* McKenna, Bankrupt.

*(District Court, W. D. Tennessee. September 30, 1881.)*

1. HUSBAND AND WIFE — SETTLEMENT ON THE WIFE — HUSBAND'S INTEREST — CONSTRUCTION.

    It is a general principle, established by the authorities, that whenever a settlement is made upon a married woman by will, deed, or other conveyance, or by statute, the husband's interests are unaffected, further than the terms of the instrument or statute, either directly or by necessary implication, require; and it is well-settled that neither exclusion during the life of the wife from the rents and profits, restrictions upon his powers of alienation, or the grant to her of powers of alienation, act to destroy his interest after her death, unless the settlement explicitly does so by appropriate terms, or by the exercise of the powers conferred his interest is defeated during her life.

2. SAME SUBJECT—BANKRUPTCY—TENANCY BY THE CURTESY—TENNESSEE CODE, §§ 2481, 2482—PROPERTY EXEMPT—REV. ST. § 5045—ASSIGNEE'S TITLE—SUBSEQUENTLY-ACQUIRED PROPERTY.

    A state statute provided that the interest of a husband in the real estate of his wife should not, *during her life*, be sold or disposed of by virtue of any judgment, decree, or execution against him, nor should the husband and wife be ejected or dispossessed of the real estate of the wife by virtue of any such judgment, sentence, or decree, nor should the husband sell his wife's real estate during her life without her joining in the conveyance in the manner prescribed by law in which married women shall convey lands. The wife was seized of lands when the husband became bankrupt, there being issue of the marriage. *Held*, that the tenancy by the curtesy *initiate* passed to the assignee in bankruptcy, subject to the statutory right of the husband and wife to continue to hold the land during her life. *Held, also*, that this state statute and the bankruptcy act did not exempt from the operation of the bankruptcy the whole tenancy by the curtesy for the life of the husband, but only so much as was measured by the life of the wife, and that on her death, pending the bankruptcy proceedings, the assignee was entitled to take the land for the remainder of the husband's life. *Held, further*, that there is nothing in the character of the estate of the husband in his wife's lands at common law, nor as modified by this statute, to prevent its passing to the assignee, subject to the statutory exemption during the wife's life, and that neither at common law nor under the statute was it property acquired by the death of the wife subsequently to the bankruptcy.

3. PRACTICE—SUMMARY PETITION—PARTIES.

A summary petition by the assignee to recover possession of land withheld by the bankrupt is the proper remedy, and a plenary suit is not necessary; nor are the children of the bankrupt and his wife, who are entitled to the reversion after a tenancy by the curtesy ceases, necessary parties to a petition by the assignee to recover that estate from the bankrupt.

4. REPEAL OF THE BANKRUPTCY LAWS—PROVISO—JURISDICTION.

The proviso to the act of congress of June 7, 1878, c. 160, (20 St. 99,) makes ample provision for continuing the jurisdiction of the court over pending cases.

Petition by the assignee in bankruptcy stating that, at the date of the petition in bankruptcy, the wife of the bankrupt was the owner of certain lands of which she and the bankrupt were then in possession; that children were born of the marriage, and pending the proceedings in bankruptcy the wife had died; that the bankrupt had not put into his schedule his interest in this land, and was now in possession, claiming his life estate by the curtesy, and in enjoyment of the rents and profits. The prayer of the petition is that the bankrupt be required to deliver possession to the assignee; that the interest of the bankrupt be sold; for a receiver; and general relief.

The bankrupt moved to dismiss the petition because—

(1) The children of the deceased wife were not made parties, and this court cannot proceed against them by petition; (2) the court cannot entertain jurisdiction since the repeal of the act to establish a uniform system of bankruptcy; (3) a summary petition is not the proper remedy; (4) on the facts stated in the petition the assignee is not entitled to recover.

The petition in bankruptcy was filed August 29, 1878; the wife died September 18, 1878; and the adjudication and assignment by the register were on November 1, 1878. The Code of Tennessee enacts as follows:

"Sec. 2481. The interest of a husband in the real estate of his wife, acquired by her either before or after marriage by gift, devise, descent, or in any other mode, shall not be sold or disposed of by virtue of any judgment, decree, or execution against him; nor shall the husband and wife be ejected from or dispossessed of such real estate of the wife by virtue of any such judgment, sentence, or decree; nor shall the husband sell his wife's real estate during her life without her joining in the conveyance in the manner prescribed by law in which married women shall convey lands.

"Sec. 2482. This exemption of the husband's interest in his wife's lands from sale shall not extend beyond his wife's life." T. & S. Code, §§ 2481, 2482.

*W. M. Randolph, (Robt. M. Heath* with him,) for motion.
*Metcalf & Walker, contra.*

HAMMOND, D. J.   The proviso to the act repealing the bankruptcy laws makes ample provision for continuing the jurisdiction of the court over all cases pending at the time of the repeal; and there is no force in the objection that the court has no jurisdiction "since the repeal of the act to establish a uniform system of bankruptcy." Act June 7, 1878, c. 160, (20 St. 99;) *Re Richardson*, 2 Story, 571; *Re Ankrim*, 3 McL. 285; *Carr* v. *Hilton*, 1 Curt. 231; *Re King*, 3 FED. REP. 839; *Re Hyde*, 6 FED. REP. 587.   That a petition like that filed in this cause is the proper remedy for the assignee, and not a plenary suit by bill or an action at law, seems well established by the authorities.   *Re How*, 18 N. B. R. 565; *Re Ettinger*, Id. 222; *Re Ketchum*, 1 FED. REP. 840; *Re Nichols*, Id. 842; *Re Moses*, Id. 845; *Re Campbell*, 17 N. B. R. 4; *Re Swearinger*, Id. 138; *Re Pellasohn*, 16 N. B. R. 265; S. C. 4 Dill. 107; *Re Benson*, 16 N. B. R. 377; *Re Betts*, 15 N. B. R. 537; *Re Boothroyd*, Id. 368; *Re Thompson*, 13 N. B. R. 300; *Re Wright*, 8 N. B. R. 430; *Re Speyer*, 6 N. B. R. 255; *Re Kempner*, Id. 521; *Re Pierce*, 7 Biss. 426; *Re Smith*, 2 Hughes, 307.

Whether the estate that the bankrupt had in the land of his wife at the date of the filing of his petition in bankruptcy passed to his assignee depends upon a proper construction of the Tennessee statute.   T. & S. Code, §§ 2481, 2482.   At common law he was, on that date, a tenant by the curtesy *initiate*, and about the character of that precise estate there has been much conflict in the books, and much confusion.   I do not, from authorities consulted, find that it has been ever settled or agreed upon whether the husband, before or after issue born, is in possession of his estate by virtue of this tenancy, or that which he has by virtue of the marriage, considered irrespectively of the birth of issue, or the possibility of such birth.   Often it is unimportant whether he is in by the one or the other, but in the conflicts that arise over marriage settlements, grants to the wife by deed or will, the statute of limitations, dissolutions of the coverture by divorce, and the effect of conveyances by the husband and the wife, one or both, the nature of this tenancy by the curtesy *initiate* has been freely discussed, but in some respects remains unsettled. Too much force is sometimes given to the death of the wife, and even to the birth of issue, when either is thought to *originate* this estate by the curtesy, and it is sometimes said, as it is argued in this case, that prior to the death of the wife it is a *possibility* only,—something like the *spes successionis* of the heir apparent or presumptive to an estate, that does not pass to a voluntary assignee, or to an involun-

tary assignee, by operation of law. This is not true of the estate at any period from the moment of marriage and seizin of the wife down to the consummation of the estate, if issue be born, by her death.

Whether, before seizin by the wife, a husband's possible curtesy in lands belonging to the wife would be assignable, in law or in equity, by treating the conveyance as a covenant to assign, or not, certainly, from the very moment of such seizin, he becomes a tenant by the curtesy, and that is undoubtedly the initial point at which this estate in the particular land vests in him, no matter whether it originates in the seizin or the marriage relation. And from that moment, although he may be in possession by virtue of the marital right, or *jure uxoris*, as it is sometimes called, he is also in possession by virtue of this estate by the curtesy, if the two be separable at all. Some of the authorities say he is in by both by a kind of *remitter*, and possibly they may in some sense be said to unite or merge into each other, though neither will destroy or absorb the other. But, whatever the distinctions may be in this regard, and however for all purposes this matter may be determined, for the purpose of giving effect to his conveyances, and for the purpose of being subjected to his debts, it is vested in him whenever the necessary seizin of the wife occurs. If he convey, or it be assigned by operation of law after seizin, even before issue born, the estate by the curtesy passes, and his assignee holds, as he held it, subject to be devested by the failure of issue occurring by the death of the wife without having given birth to a child born alive; or, whether issue be born or not, by the death of the husband terminating the estate in the life-time of the wife; and in some peculiar circumstances, perhaps, by other events. The mistake is often made of supposing that the survivorship of the wife *defeats* the tenancy by the curtesy. Her survival has no such effect. His death *terminates* his life estate necessarily, whether it occurs before or after that of the wife. But it does not follow that this defeasible and determinable character of the estate reduces it to a bare possibility, or makes it an estate called into being by the happening of a contingency—either that of the birth of issue or the death of the wife in the life-time of the husband. The husband has, at best, only a life estate, and of course his death ends it, whether it happens before or after the death of the wife; and what the books mean by saying that her death consummates this tenancy by the curtesy is that from that time on there is no marital relation furnishing him any other right to possession or ownership of her lands than that which he has derived through this curtesy of the law. The death of the wife neither originates nor

vests the estate, but only consummates or makes perfect that which had been before originated and vested. I shall not here critically examine the authorities consulted on the general character of this estate with a view of determining the exact scope of our statute, because, whatever may be that character, it is too well settled that it may be conveyed by the husband, may be sold under *fieri facias,* and passes to an assignee in bankruptcy, to require more than a citation of some of the cases on that point. *Gardner* v. *Hooper,* 3 Gray, 398; *Vreeland* v. *Vreeland,* 1 Green, N. J. Eq. 513; *Boykin* v. *Rain,* 28 Ala. 332; *Day* v. *Cochran,* 24 Miss. 261; *Schermerhorn* v. *Miller,* 2 Cow. 439; *Gibbins* v. *Eyden,* L. R. 7 Eq. 371; *Morgan* v. *Morgan,* 5 Madd. 408; *Follett* v. *Tyrer,* 14 Sim. 125; *Cooper* v. *Macdonald,* L. R. 7 Ch. Div. 288; 1 Bish. Mar. Wom. § 489; Hill. Bankruptcy, (2d Ed.) 112, § 14. And in *Kesner* v. *Trigg,* 98 U. S. 50, no question was made but that the assignee took the estate by the curtesy. The same principle is found in *Re Bright,* L. R. 13 Ch. Div. 413, where a fund of personal estate was settled on the mother for life, and after her death on the children of the marriage, and it was held that the assignee in bankruptcy of one of the children took his share, though the life tenant did not die for nearly ten years after the bankruptcy.

Has our statute changed this result? I think not. Standing alone, section 2481 of the Code would exempt the whole estate of the husband from liability for his debts, and, as a consequence, by operation of the bankruptcy act itself, (Rev. St. § 5045,) it would not pass to the assignee. But section 2482 of the Code operates to restrict the quantity of the husband's estate that is exempt to so much of it as is measured by *his wife's* life. He holds the estate for his own life, and it is exempt from execution *for the life of another,* and therefore not necessarily for his own life. He asks here too much—more than this statute in terms gives him—when he claims exemption for the *whole* estate by the curtesy coextensive with *his own life.* That the statute has not abridged his common-law estate by limiting it to the life of his wife is plain, because he claims it after her death, and during his own life, and this he can do only on the theory that the statute has not interfered with his common-law estate in this land in regard to its quantity. If the statute has preserved to him his tenancy by the curtesy it has preserved it to his creditors, because the statute only cuts them off during the life of the wife.

It has been said in the books that a tenancy by the curtesy stands somewhat as if the wife had made a lease of the land to her husband

for his life, the reversion being in her or her heirs. Now, out of this estate of the husband the statute carves a portion which it exempts from execution, and that portion does not pass to an assignee in bankruptcy; not because of any peculiarity in the estate itself as being unassignable, but because the bankruptcy laws have in terms declared that property so exempt shall not pass to the assignee. It cannot, then, I think, be successfully claimed that the portion which we may call a surplus remaining after the wife's death is also exempt.

The next argument to be considered is that the estate now enjoyed by the husband is subsequently acquired property coming to him on the death of his wife, happening since the petition in bankruptcy was filed. This, to my mind, involves a total misapprehension of the nature of the estate of tenancy by the curtesy, and can only be sustained on the theory that the statute has created a new kind of estate for the husband in his wife's lands, or, rather, two estates. One of these, which he enjoys during her life, and in the enjoyment of which he was when the petition in bankruptcy was filed, is claimed as exempt property; and, as to the other, that it was created for him, or was called into existence by the death of the wife happening since the bankruptcy. During his wife's life this latter estate, it is argued, was a mere possibility which did not pass. The case of *Jackson* v. *Middleton*, 52 Barb. 9, is very much relied on to sustain this position. It should be read in connection with *Moore* v. *Littel*, 40 Barb. 488; 3 Am. Law Reg. (N. S.) 144, where the same deed was construed. There was a deed to John Jackson for his life, and after his death to his heirs and their assigns. It was held that during the life of the life tenant the heirs had "an alienable contingent estate in remainder," and that this estate, under a New York statute which subjected "lands, tenements, or hereditaments" to execution, was not liable to that writ. But a tenancy by the curtesy, in my judgment, has no sort of analogy to such an estate as the one mentioned in that case. If, however, this be incorrect, it is a sufficient answer to say that our bankrupt statute is much broader, and vests in the assignee all the estate, real and personal, of the bankrupt. Rev. St. § 5044. *Krumbaar* v. *Burt*, 2 Wash. 406, is also relied on, where it was decided that, under the act of 1800, possibilities did not pass. But our later acts are more enlarged in their operation; and even under the old acts this case was not approved, but overruled. *Belcher* v. *Burnett*, 126 Mass. 230; *Comegys* v. *Vasse*, 1 Pet. 193, 218; *Vasse* v. *Comegys*, 4 Wash. 570; *Nash* v. *Nash*, 12 Allen, 345. Under the old English acts, which were "very darkly

penned," (*Re Marsh*, 1 Atk. 158,) when the creditors only took "all such interest in lands as the bankrupt may lawfully depart withall,"—*Comegys* v. *Vasse*, 1 Pet. (original edition,) 200,—it was at first determined that only such interests as were alienable at law passed to the assignee, but afterwards it was held that such as were assignable in equity also passed; and possibilities coupled with an interest came to be regarded as assignable. Our bankruptcy act was intended to relieve us of all this trouble by using the most comprehensive terms, and there can be no doubt that every character of property belonging to the bankrupt himself passes. Bare possibilities—such, for instance, as the hope that one has that his father or other relative will die intestate, leaving him an inheritance—do not pass; but I cannot see that the tenancy by the curtesy, either at common law or under this statute, is of that character.

It is also argued, in support of the position that this estate of the husband did not pass, that "the assignee in bankruptcy does not take the whole legal title as heirs and executors do, but only such estate as the bankrupt has a beneficial interest in;" and this is true. If he has not a beneficial interest in a tenancy by the curtesy *initiate*, it is difficult to see why he has not. He has not so great benefit under the statute as he had at common law, for there are restrictions on his powers of alienation and restrictions on the right of his creditors to subject his interest to their debts; but in neither respect has his interest been wholly demolished, and the assignee only claims by this petition that beneficial interest which the statute left to him. This above-quoted formula is often found in the authorities, but I do not find that it has ever been applied to save to the bankrupt any property that belonged to him, but only such as belonged to third persons and which was held by him under some kind of trust relation. In the earlier stages of bankruptcy legislation, when the statutes were not so elaborate as now, it was a principle resorted to and established by the courts to save to third persons their rights in property which the bankrupt held for them, and to prevent the devolution of such trusts on the assignee, who did not become a general administrator of the bankrupt's legal and equitable powers over all property, doing in his stead for others what the bankrupt was required to do, but was restrained in his title to the property of the bankrupt which creditors could apply to their debts. The assignee, for example, takes subject to a wife's right of dower, to her right of survivorship; subject to her right to an equitable

settlement; subject to all defeasances and contingencies in her favor, or in favor of any third person, for that matter; subject to the liens of a mechanic, or a factor, or the like; subject to the right of rescission of a contract for fraud, in some instances; subject to the *estoppels* on the bankrupt, where they do not grow out of some fraud on creditors; and, generally, subject to all trusts, liens, and burdens existing at the time. In some cases the circumstances were such the assignee took nothing, and in some only the surplus after the burdens were satisfied. *Brown* v. *Heathcote*, 1 Atk. 160; *Scott* v. *Surman*, Willes, 400; *Mitford* v. *Mitford*, 9 Ves. 87; *Re Dow*, 6 N. B. R. 10; *Rogers* v. *Winsor*, Id. 246; *Re McKay*, 1 Low. 345; *Re Faxon*, Id. 404; *Re Griffiths*, Id. 431; *Goddard* v. *Weaver*, 1 Woods, 257; *Re Hester*, 5 N. B. R. 285; *Eberle* v. *Fisher*, 13 Pa. St. 526; *Eshelman* v. *Shuman*, Id. 561; *Keller* v. *Denmead*, 68 Pa. St. 449; *Ontario Bank* v. *Mumford*, 2 Barb. Ch. 596.

Here, again, our bankruptcy statutes have recognized and declared this principle, and provide that no trust estates shall pass, and that all liens and rights of third persons shall be preserved, so that the assignee either does not take at all, or else takes subject to the liens and burdens. Rev. St. 5053, 5075, 5044, and notes; Bump, Bankruptcy, (10th Ed.) Applying the principle here, the assignee took the tenancy by the curtesy initiate as it existed at the date of the petition in bankruptcy, subject to the right of the wife, if she survived her husband, to defeat his estate; or, more accurately, subject to the determination that would come by his death, and subject to her rights under this Tennessee statute to remain in possession during her life, jointly with her husband, and that they should, *during that time,* enjoy the estate without disturbance by his creditors or his assignees of any kind, whether in bankruptcy or any other, unless she, by her deed according to law, should consent to give up the land. And it is possible that, by joint deed of the husband and wife, the assignee's title might have been defeated, even after the bankruptcy, in the same way as is sometimes done where she has a power of appointment; but it is not necessary to decide that here, as no such conveyance was made, and it is well settled that where she has the power to defeat his estate by appointment or conveyance of any kind, her failure to exercise it preserves his rights. The statute operates as a settlement upon her to that extent, but no further. And it is to be observed that it does not, as some statutes do, create a separate estate in the wife, nor destroy his estate in his wife's lands,

either that he holds *jure uxoris*, or the larger estate of tenancy by the curtesy.

It is always a question of intention whether the legislature has, by such statutes as these, cut off the husband's marital rights entirely or only partially; and they are construed, just as wills, deeds, marriage settlements, and other conveyances are, to go no further in that direction than the language used, in terms or by necessary implication, requires. This construction I have given the statute is supported by every Tennessee case which has construed or mentioned it. *Johnson* v. *Sharp*, 4 Cold. 45; *Dodd* v. *Benthal*, 4 Heisk. 601; *Bottoms* v. *Corley*, 5 Heisk. 1; *Corley* v. *Corley*, 8 Bax. 7; *McCallum* v. *Petigrew*, 10 Heisk. 394; *Lucas* v. *Rickerich*, 1 Lea. 726; *Young* v. *Lea*, 3 Sneed, 249; *Coleman* v. *Satterfield*, 2 Head. 259; *Gillespie* v. *Worford*, 2 Cold. 632; *Aiken* v. *Suttle*, 4 Lea. 103.

It is also supported by the cases construing settlements on the wife by will or deed, where the benefits conferred, the language used, and the restrictions on alienation and the husband's marital rights are similar to those in this statute. *Brown* v. *Brown*, 6 Humph. 126; *Hamrico* v. *Laird*, 10 Yerg. 222; *Frazier* v. *Hightower*, 12 Heisk. 94; *Baker* v. *Heiskell*, 1 Cold. 641; *Appleton* v. *Rowley*, L. R. 8 Eq. 139; *Marshall* v. *Beall*, 6 How. 70; *Moore* v. *Webster*, L. R. 3 Eq. 267; *Bennet* v. *Davis*, 2 P. Wms. 316; Eden, Bankruptcy, 245; 25 Law Lib. 193.

It also finds a complete analogy in the construction of our homestead statutes, which confer a similar benefit on the husband, wife, and children, and yet it is held that creditors may subject the husband's interest, subject to this right of occupancy and possession by the family, which may last during the life of the husband and wife or the survivor, and until the youngest child reaches a certain age. *Moore* v. *Hervey*, 1 Leg. Rep. (Tenn.) 22; *Mash* v. *Russell*, 1 Lea. 543; *Lunsford* v. *Jarrett*, 2 Lea. 579; *Gilbert* v. *Cowan*, 3 Lea. 203; *Gray* v. *Baird*, 4 Lea. 212; *Jarman* v. *Jarman*, Id. 671, 676. In *Marsh* v. *Russell*, *supra*, it is said, "the vendee is clothed with the legal title in reversion expectant on the termination of the homestead estate," which quite as accurately describes the kind of estate the assignee took in this case.

The same ruling has been made in other states where the statutes give a qualified homestead exemption, while in those where the exemption is absolutely of the whole estate, the assignee takes nothing. *Rix* v. *Capitol Bank*, 2 Dill. 367; *Re Tertelling*, Id. 339; *Re Betts*, 15 N. B. R. 537; *Johnson* v. *May*, 16 N. B. R. 425; *Re Wat-*

*son*, 2 N. B. R. 570; *Re Poleman*, 5 Biss. 526; *McFarland* v. *Good-man*, 6 Biss. 111; *Re Hinkle*, 2 Sawy. 305; *Re Hunt*, 5 N. B. R. 493; *Re Vogler*, 8 N. B. R. 132; *Re Sinnett*, 4 Sawy. 250.

It also finds support in the cases construing statutes of this and other states for the benefit of married women or · their families. *Cooper* v. *Maddox*, 2 Sneed, 135; *Lyon* v. *Knott*, 26 Miss. 548; *Rabb* v. *Griffin*, Id. 579; *Stewart* v. *Ross*, 54 Miss. 776; *Hatfield* v. *Sneden*, 54 N. Y. 280; *Re Winne*, 1 Lans. 508; S. C. 2 Lans. 21; *Thompson* v. *Green*, 4 Ohio St. 216, 232; *Plumb* v. *Sawyer*, 21 Conn. 351; *Silsby* v. *Bullock*, 10 Allen, 94; *Staples* v. *Brown*, 13 Allen. 64; *Walsh* v. *Young*, 110 Mass. 396, 399.

Upon consideration of these authorities it will be found to be a general principle that, whether the settlement is made by statute, deed, will, or contract, the husband's marital rights are not interfered with further than the terms of the settlement go, and that what remains to him can be subjected by his creditors as if the settlement had not been made; and it is as well settled as it is possible to be that the circumstance that the wife is to receive the rents or profits or to enjoy· the estate during her life, or that the husband is forbidden to convey it except with her consent, or that she may alone or jointly with him convey it or defeat the husband's estate by appointment by will or otherwise, will not, nor will any of them combined, alter the construction so as to affect or defeat his marital rights, nor the estate of his assignee ·or purchaser, except strictly according to the terms of the settlement. If an estate remains to him after her death as the residuum of what he would have had but for the settlement, his creditors may subject it, and it passes by his deed subject to be defeated if she survives or dies without exercising her powers of alienation.

Finally, there is an unreported case in this court, in *Re Stack*, a bankrupt, (June, 1879,) in which the circuit judge, sitting for the district judge, who was incompetent, upon the same principle decided in favor of the assignee. The wife of the bankrupt, under a deed from him, held land to her "sole and separate use and benefit, free from the debts, liabilities, and control of her present or any future husband, with power to sell, by joint deed with her husband, for reinvestment on same trusts, and if she should die in the life-time of her husband then to revert to him in fee-simple." The estate of her husband was not mentioned in the schedules of the bankrupt, as in this case, he deeming it secure from the operation of the bankrupt law, and the wife died pending the proceedings in bankruptcy, as here, whereupon the assignee filed a petition, like that in this case,

and the court compelled the bankrupt to surrender the land to the assignee. Under this deed the wife had all the protection she would have had under this statute, and a larger estate than she would have had if she had inherited the land or held it by an ordinary conveyance. Besides, the land itself was, at the date of the petition in bankruptcy, under the protection of this statute, both as to the interest of the wife and that of the husband. And, as to his interest, the only difference I can see is that there he had a reversionary estate in fee-simple, contingent upon his surviving his wife, but liable to be defeated also by their joint deed, (leaving out the reinvestment clause,)while here the bankrupt had a life estate, subject to the same contingencies. It was ruled that this estate was vested at the time of the bankruptcy, and did not vest at the death of the wife, and was, therefore, not subsequently acquired property. Furthermore, the ruling must have been the same in that case if Stack had had no contingent reversionary interest under the deed, and it had appeared there was issue of the marriage, for he was, in that event, a tenant by curtesy, notwithstanding this was a separate estate, and would have held the land for his life, unless it may be the words "free from the debts, liabilities, or control of any *future husband*" should be construed to entirely cut off his (Stack's) curtesy. I do not see any difference in principle between that case and this, because if Stack had under that deed such an interest as passed to his assignee during the life of his wife, subject to her rights under the deed and this statute, I do not see why the bankrupt here did not have, by the common law regulating the tenancy by the curtesy, such an interest in his life estate as passed, subject to the rights of his wife and his own under the statute.

The objection, in this view of the case, that the children of the wife are not parties to this proceeding, is not tenable. The assignee only claims the life estate of the bankrupt, and in this the children have no interest.

Motion overruled.